UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

IN RE: SHAREHOLDERS OF R.E.    :    DOCKET NO. 2:10 CV 1260
HEIDT CONSTRUCTION
COMPANY, INC.

VS.                            :    JUDGE MINALDI


TED W. PRICE, JR., ET AL.      :    MAGISTRATE JUDGE HILL

<u>MEMORANDUM RULING</u>

Pending before the undersigned are the plaintiff's Motion to Remand this suit to

the 14th Judicial District Court and Motion for Attorney Fees and Costs. [rec. docs. 11 and

23].   Defendants, R.E. Heidt Construction Company, Inc. and Continental Casualty

Company (collectively "the defendants"), have filed oppositions [rec. docs. 24, 25 and

45], to which plaintiff has filed a Reply [rec. doc. 47].  Oral argument was heard and the

Motion was taken under advisement.  For the following reasons, the Motion to Remand is

**GRANTED in part and DENIED in part,**  subject to the stay set forth in the

accompanying order**,** and accordingly, all claims, with the exception of those set forth by

Robert W. Fenet, individually, in the plaintiff's Second Supplement to Second Amended

and Restated Petition [rec. doc. 1-1], will be remanded to state court.

BACKGROUND

On April 15, 2009, plaintiff, Robert W. Fenet ("Fenet"), in his capacity as a

shareholder of R.E. Heidt Construction Company, Inc. ("the Company"), on behalf of all

similarly situated shareholders, filed a shareholder derivative action in the 14th Judicial

District Court, seeking injunctive relief against Ted W. Price, Jr. ("Price").  Plaintiff

alleged that Price used false financial statements to coerce former bond and bank

guarantors, Ted Price, Sr. and Robert W. Price, Sr., to withdraw their guarantees, so that

he, Price, could take over the Company as President, change the Company management

and manage the relationships existing between the bonding company and the banks,

thereby enabling him to switch bonding companies, guarantee the newly acquired bonds

and divert bond fees to himself, to the detriment of the Company and its shareholders.

[rec. doc. 4].  These claims were asserted solely under Louisiana law.

By Second Amended and Restated Petition, Fenet, in his capacity as a former

director and minority shareholder of the Company, added Robert W. Price, Jr. ("Price

Jr."), a director of the Company, as an additional defendant.  Fenet also added the

Company shareholders, as nominal defendants, and asserted claims for monetary damages

on behalf of the Company.  Fenet, individually, also asserted a claim for monetary

damages against the Company for breach of contract (a bond fee guarantee agreement

whereby Fenet was to receive bond fees on the former bonds on which he was a

guarantor). [rec. doc. 5, pgs. 1-20].  All of these claims were asserted under Louisiana

law.

By First Supplemental Petition, Fenet, in his capacity as a former director and

minority shareholder of the Company, named, as an additional defendant, the Continental

Casualty Company ("Continental"), the alleged Directors and Officers liability insurer of

Price and Price Jr., as a direct defendant under the Louisiana Direct Action Statute. [rec. doc. 5, pgs. 21-23].

By Second Supplement to Second Amended and Restated Petition [rec. doc. 1-1], Fenet, individually, added an additional claim for relief, alleging that on June 15, 2010, the Company terminated, or threatened to terminate, his company/employee health insurance benefits, as well as other company/employee benefits, to which he claims he is rightfully entitled, by virtue of oral, implied and/or express contracts between him and the Company. [rec. doc. 1-1, ¶ 69 and 70].

Fenet further alleges that the termination of his benefits caused him mental distress. Fenet asserts a cause of action under the Louisiana Whistleblower Statute (La. R.S. 23:967), which, he asserts, entitles him to damages including compensatory damages, back pay, benefits and reinstatement, as well as attorney fees.[1] [rec. doc. ¶ 72 and 73].

It is undisputed that the claimed health insurance benefits are provided under an ERISA regulated plan.[2] The Company is the plan administrator. [rec. doc. 24-1, ¶ 6]. By letter dated June 15, 2010, counsel for the Company notified Fenet that his health, life and

---

[1]Fenet did not expressly pray for the reinstatement of his health benefits in his Prayer for Relief. He did pray for remedies available under the Whistleblower Statute, which include "benefits." La. R.S. 23:967(C)(2). During oral argument, Fenet's counsel stated that Fenet was seeking reinstatement of his health insurance benefits.

[2]Portions of the plan are attached as an exhibit to the defendant's opposition. [rec. doc. 24-2].
Fenet also seeks reinstatement of other benefits, including reinstatement of life insurance and car expense benefits. However, during oral argument, the parties advised that these benefits are apparently not provided under any ERISA regulated plan.

dental insurance benefits were being canceled as a result of a June 9, 2010 vote of the board of directors.  [*See* rec. doc. 1-1, ¶ 69; 11-1, pg. 3].  During oral argument, in response to questions by the undersigned, defense counsel advised that the Company performed research and had separate discussions as to Fenet's entitlement to each benefit prior to termination.

On August 10, 2010, based on the claims asserted by Fenet in his Second Supplement to Second Amended and Restated Petition, the Company, with the consent of all non-nominal defendants, removed the entire action to this court alleging federal question jurisdiction pursuant to the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §1001, et. seq.  [rec. doc. 1].

On August 23, 2010, Fenet filed the instant Motion to Remand.[3] [rec. doc. 11].  By Supplemental Motion, Fenet requests attorney's fees and costs for improper removal. [rec. doc. 23].  Pursuant to this court's standing Orders, the Motions have been referred to the undersigned Magistrate Judge for disposition.

## LAW AND ANALYSIS

*Removal and Federal Question Jurisdiction*

"Federal courts are courts of limited jurisdiction.  We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests

---

[3]The Motion was originally set for consideration on September 13, 2010. [rec. doc. 15].  However, at the request of the parties, the Motion was reset for September 28, 1010 and thereafter, on October 21, 2010.  [rec. docs. 39 and 48].

on the party seeking the federal forum." *Howery v. Allstate, Ins. Co.*, 243 F.3d 912 (5th Cir. 2001).

Federal question jurisdiction may be supported under any of the following three theories, 1) when the complaint raises an express or implied cause of action that exists under a federal statute; 2) when an area of the law is completely preempted by the federal regulatory regime; or 3) if the cause of action arises under federal common law principles. *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924 (5th Cir. 1997). The defendants contend that federal question jurisdiction is proper in this case under the second theory, that is, that the claims asserted by Fenet in his Second Supplement to Second Amended and Restated Petition are completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

There are two types of ERISA preemption: complete preemption under § 502(a) (the civil enforcement provision codified at 28 U.S.C. § 1132(a)(1)(B)) and conflict or ordinary preemption under § 514 (the preemption provision codified at 28 U.S.C. § 1144(a)). *Giles v. NYL Health Plans, Inc.*, 172 F.3d 332, 336-337 (5th Cir. 1999). The Fifth Circuit has emphasized that "complete" preemption is not the same as "conflict" or "ordinary" preemption. The former supports federal question jurisdiction, whereas the latter does not. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 291 fn. 3 (5th Cir. 1999) (*en banc*), *overruled on other grounds by*, *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008); *Giles*, 172 F.3d at 337.

Complete preemption is an exception to the "well-pleaded" complaint rule.[4]

*Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542

(1987*);  AETNA Health, Inc., v. Davila*, 542 U.S. 200, 207-208, 124 S.Ct. 2488 (2004);

*Giles*, 172 F.3d at 336.  Complete preemption occurs when a federal statute wholly

displaces a state law cause of action and, in effect, converts the state law claim, even if

pleaded in terms of state law, into a federal cause of action.  *Taylor*, 481 U.S. at 62-66;

*Davila*, 542 U.S. at 207-211.  The ERISA civil enforcement provision, § 502(a), codified

at 29 U.S.C. § 1132(a)(1)(B), is one such statute.  *Taylor,* 481 U.S. at 62-66; *Davila*, 542

U.S. at 208; *Giles*, 172 F.3d at 337; *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th

Cir. 2003) (*en banc*).

With respect to complete preemption, the Supreme Court has stated that "'causes

of action within the scope of the [ERISA] civil enforcement provisions of § 502(a) [are]

removable to federal court.'"  *Davila*, 542 U.S. at 209 *citing Taylor,* 481 U.S. at 65-66.

Moreover, if an individual, at some point in time, could have brought his claim under

ERISA § 502(a)(1)(B), then the individual's cause of action is completely preempted.

*Davila*, 542 U.S. at 210.

---

[4]As recognized by the Fifth Circuit:

> Ordinarily, preemption of state law by federal law is a defense to a plaintiff's
> state law claim, and therefore cannot support federal removal jurisdiction under
> the "well-pleaded complaint" rule. "Complete preemption," in contrast, exists
> when the federal law occupies an entire field, rendering any claim a plaintiff may
> raise necessarily federal in character. Because ERISA preemption is so
> comprehensive, it can provide a sufficient basis for removal to federal court even
> though it is raised as a defense, notwithstanding the "well-pleaded complaint"
> rule.

*Hubbard v. Blue Cross &Blue Shield Ass'n,* 42 F.3d 942, 945 (5th Cir. 1995) (internal citations omitted).

Accordingly, to determine whether the instant suit is subject to complete preemption, and thus is removable on the basis of federal question jurisdiction, this court must determine whether Fenet's claims seek relief "within the scope of the civil enforcement provisions of § 502(a)." *Arana*, 338 F.3d at 440.

The defendants argue that Fenet's claim regarding the termination of his health insurance benefits, asserted against them in Fenet's Second Supplement to Second Amended and Restated Petition, is completely preempted. The undersigned agrees. ERISA's civil enforcement provision, codified at 29 U.S.C. § 1132(a)(1)(B), provides that a civil action may be brought by an ERISA plan participant or beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). If a state law cause of action is "within the scope of" this civil enforcement provision, the action is completely preempted. *Arana,* 338 F.3d at 437.  Suits "to recover benefits from a covered plan . . . fall[] directly under § 502(a)(1)(B) of ERISA", which provides an exclusive cause of action for resolution of such disputes." *Taylor,* 481 U.S. at 63-64; *Davila*, 542 U.S. at 214.

Fenet brings this claim to rectify an alleged wrongful termination of his health insurance benefits, to which he claims entitlement, as well as to ensure his rights to future benefits under the R.E. Heidt ERISA regulated plan.  More specifically, Fenet asserts a claim, purportedly under Louisiana state law, against the defendants for reinstatement and

continuance of his eligibility for benefits under the plan.  As such, Fenet's claim can fairly be characterized as a claim "to recover benefits" due him under the terms of the plan, "to enforce his rights under the terms of the plan" and  "to clarify his rights to future benefits under the plan",  which falls squarely within the scope of ERISA § 502(a)(1)(B).

This conclusion is bolstered by the relief sought by Fenet with respect to this claim.  Fenet expressly prays for a judgment for damages available under the Louisiana Whistleblower Statute, which include benefits and reinstatement, and those "otherwise available to Plaintiff for the Company's termination and/or threatened termination of certain company/employee benefits of Plaintiff."  *See* Prayer for Relief ¶ 5; La. R.S. 23:967(C)(2).  Furthermore, at oral argument, Fenet's counsel acknowledged that Fenet is seeking reinstatement of his health insurance benefits, relief which is clearly within the scope of the ERISA enforcement provision.

While Fenet argues that his claim is for retaliatory termination of benefits under Louisiana state law, before he can recover an antecedent question must be answered, that is, whether Fenet is legally eligible for benefits under the plan in the first instance.  That question must be determined under the terms of the plan, and in accordance with federal statutes and regulations which define and interpret ERISA.  Such determinations are unquestionably within the exclusive purview of § 502(a)(1)(B), the ERISA enforcement provision.

Stated differently, Fenet's claim is not entirely independent of the federally regulated plan.  If the defendants are correct that Fenet is not eligible for benefits under the terms of the plan, then the termination of Fenet's benefits could not be "wrongful" because Fenet was never eligible for benefits under the plan.  If, on the other hand, Fenet was entitled to benefits under the plan, then the termination of those benefits might well be "wrongful".  Obviously, Fenet's eligibility under the plan must be decided before the termination of his benefits can be characterized as "wrongful" or not.  Thus, the plan forms an essential part of Fenet's claim as the defendants' potential liability initially depends on the terms of the plan.  Accordingly, ERISA forms the exclusive basis for recovery herein.  *See Davila*, 542 U.S. at 213-214.

Fenet argues that his claims are asserted solely under the Louisiana Whistleblower Statute.  He claims that the right to recover for the retaliatory termination of his health insurance benefits, and that, as such, the damages he seeks are merely an element of damages related to his retaliation claim. In support, Fenet relies on the Fifth Circuit's decision in *Rozzell v. Security Services, Inc.*, 38 F.3d 819 (5th Cir. 1994) and a decision by Judge Mentz of the Eastern District in *Zewe v. Adams & Reese*, 852 F.Supp. 516 (E.D. La. 1993).  The undersigned finds both cases are factually distinguishable and inapposite to the question before this court.

In *Rozzell*, the plaintiff presented a wrongful discharge from employment claim, not a claim for unlawful denial of employment benefits.   Thus, the loss of benefits was

"merely an element of damages related to a claim for wrongful discharge."  *Id*. at 822-823.  Stated differently, the loss of employment benefits was merely an element of damages of the plaintiff's claim for wrongful termination of employment.  Indeed, the court distinguished an earlier Fifth Circuit decision on those very grounds, noting that the plaintiff made no independent claim that the denial of his benefits was illegal under state law.  *Id. citing Burks v. Amerada Hess Corp*., 8 F.3d 301, 305-306 (5th Cir. 1993), *overruled on other grounds by Giles*, 172 F.3d at 338.

Likewise, in *Zewe*, the essence of the plaintiff's claim was that he had been wrongfully terminated from his employment.  The plaintiff alleged that his employment was unlawfully terminated because he had disclosed environmental violations allegedly committed by his employer.  In connection with his termination, the plaintiff alleged that his employer also terminated his health benefits and removed him from a health related program in which he had been enrolled.  *See Id*. at 519.  The court found that the loss of benefits was a mere consequence of the plaintiff's termination, which, in turn, was precipitated by his whistle blowing activities.  *Id*. at 519-520.  In support of this finding, the court cited cases for the proposition that "in the case of a claim from wrongful termination, no ERISA preemption occurs when the loss of pension benefits was a 'mere consequence of, but not a motivating factor behind, a termination of employment.'" *Id*. at 519.

In this case, unlike the *Rozzell* and *Zewe* cases, Fenet does not claim wrongful termination of his employment, which as a result thereof, caused his termination from the ERISA plan.  Rather, Fenet asserts a separate and independent claim directed at his eligibility to receive ERISA benefits.  Plaintiff's complaint is that his health insurance coverage under an ERISA plan was terminated.  Thus, unlike the *Rozzell* and *Zewe* cases, the health insurance coverage sought by Fenet is not a consequence of the relief he seeks.  Rather, the restoration of his health insurance benefits is the specific relief he seeks.[5]

Furthermore, in both *Rozzell* and *Zewe*, the plaintiffs' eligibility to receive benefits under the terms of the ERISA plans was not in dispute.  Thus, there was no need for the courts to consult, construe or interpret the coverage of the ERISA plans to determine the plaintiffs' eligibility for benefits.  Eligibility was conceded.  In this case, however, Fenet's eligibility to receive the claimed benefits is in serious dispute; the defendants in this case contend that Fenet is not eligible to receive benefits under the terms of the plan.  Thus, unlike the *Rozzell* and *Zewe* courts, this court cannot resolve the present claim without consulting, construing and interpreting the terms of the R.E. Heidt ERISA plan.

For the foregoing reasons, the undersigned finds that Fenet's Louisiana state law claim for retaliatory termination of Fenet's health insurance benefits asserted against the defendants in Fenet's Second Supplement to Second Amended and Restated Petition falls

_____

[5]It is true that under the Whistleblower Statute Fenet, if successful, will be entitled to additional damages.  However, this claim arises from the cancellation of his health insurance benefits, which, Fenet claims, was in retaliation for his having filed the shareholder derivative action.  It was the cancellation of these benefits which resulted in this claim and it is the restoration of these benefits that Fenet chiefly seeks.

within the scope of § 502(a)(1)(B) and is therefore completely preempted, and, as such, was properly removed to this court.[6]

Of course, under 28 U.S.C. §1367(a), this court can exercise supplemental jurisdiction over the related Louisiana state law claims for retaliatory termination of benefits which are not governed under ERISA, asserted by Fenet in his Second Supplement to Second Amended and Restated Petition.  These claims are so factually related to the claim over which this court has original jurisdiction that they form part of the same case or controversy.[7]   *See Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966);  *Chicago v. International College of Surgeons*, 522 U.S. 156, 164-165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

**Remand under § 1441(c)**

In this case, removal was proper under 28 U.S.C. § 1441(c)[8] because Fenet's claim for health insurance benefits under the plan maintained by R.E. Heidt, is governed by

---

[6]To the extent that plaintiff asserts entitlement to benefits under a breach of contract theory, decisions of the Supreme Court hold that ERISA's civil enforcement provision displaces state common law breach of contract, tort, and bad faith claims, as well as claims for extra-contractual damages like those plaintiff asserts herein.  *Taylor*, 481 U.S. 58, 60 and 64-65 (1987); *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 54 (1987); *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 144 (1985).  If this were not the case and "ERISA plan participants and beneficiaries were free to obtain remedies under state law . . . ", "the federal scheme would be completely undermined. . . ."  *Taylor,* 481 U.S. at 64-65; *Pilot Life*, 481 U.S. at 54.

[7]See fn. 2, *infra.*

[8]§1441(c) provides:
> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

federal law (ERISA), and is therefore within this court's federal question jurisdiction. *See* 29 U.S.C. § 1132(e)(1) (providing for federal court jurisdiction in ERISA matters). Moreover, those claims are joined with one or more otherwise non-removable claims or causes of action, thus, rendering the "entire case" removable. Accordingly, this court may determine all issues or exercise its discretion to remand those matters in which state law predominates. 28 U.S.C. § 1441(c).

Pursuant to 28 U.S.C. § 1441(c), this court has discretion to remand all matters, including distinct claims, if state law predominates. *See Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100 (5ᵗʰ Cir. 1996); *Metro Ford Truck Sales, Inc. v. Ford Motor Company,* 145 F.3d 320, 327-328 (5ᵗʰ Cir. 1998). Thus, in order to remand, a claim must be a separate and independent claim, otherwise non-removable in which state law predominates, joined with a federal question. *Eastus,* 97 F.3d at 104; *Metro Ford truck Sales, Inc.,* 145 F.3d at 327.

For the reasons which follow, this court will exercise its discretion to remand the claims asserted by Fenet in his Original, First Supplemental Petition and Second Amended and Restated Petition.

It is clear that state law predominates on all claims asserted in Fenet's Original, First Supplemental Petition and Second Amended and Restated Petition. In these Petitions, Fenet asserts a shareholder derivative action, related claims for monetary damages on behalf of the Company, a claim under the Louisiana Direct Action Statute

against the corporate officers' Directors and Officers liability insurer, and a breach of

contract claim for breach of a bond fee guarantee agreement, whereby Fenet was to

receive bond fees on the former corporate bonds on which he was a guarantor.  All of

these claims are unquestionably asserted solely under Louisiana law.

Furthermore, because there is no diversity in this case, without the ERISA claim

asserted in Fenet's Second Supplement to Second Amended and Restated Petition, these

claims could not have been properly removed alone because they were not removable by

themselves.

The defendants argue that all of the claims asserted by Fenet in each of his

petitions are not separate and independent, and, hence, remand of any of these state law

claims would be improper.  The undersigned disagrees. The claims asserted in Fenet's

Original, First Supplemental Petition and Second Amended and Restated Petition are

separate and independent from the federal and related state law termination of benefits

claims asserted by Fenet in his Second Supplement to Second Amended and Restated

Petition.

Determination of whether a claim is separate and independent involves

examination of the wrong or wrongs for which relief is sought.  If there is a single wrong

for which the plaintiff may recover only once, the separate and independent inquiry is not

satisfied.  Moreover, claims are not independent if they involve substantially the same

facts or if one claim depends upon establishing liability under the other.  *See Eastus,* 97

F.3d at 104; *Metro Ford Truck Sales, Inc*., 145 F.3d at 328.

In this case, Fenet complains of multiple wrongs, for which separate relief is available.  Moreover, Fenet's claims do not involve the same facts, nor does one claim depend on establishing liability under the others.

To the contrary, the claims asserted by Fenet in his Original, First Supplemental Petition and Second Amended and Restated Petition, involve different rights and responsibilities, seek different relief and involve facts, and the application of law to those facts, different than those at issue with respect to the federal claim (and the closely related state law claims) asserted by Fenet in his Second Supplement to Second Amended and Restated Petition.

Fenet's shareholder derivative action, related claims for monetary damages on behalf of the Company, and his claim under the Louisiana Direct Action Statute against the corporate officers' Directors and Officers liability insurer arise from alleged improper actions in 2007 and 2008, when it was discovered that bonding fees were allegedly being improperly paid. [*See* rec. doc. 4, ¶ 27, 29].

Fenet's breach of contract claim arises from the alleged  breach of a bond fee guarantee agreement executed in 1996, for which Fenet seeks bond fees for the years 2003, 2005, 2006 and 2007, as well as proportionate shares of the fees for the years 1996-2002 and 2004. [*See* rec. doc. 5, ¶ 12 and 16].  The wrong sought to be remedied in all of these claims relates to the alleged scheme by Price and Price, Jr. to acquire control of the

bonds in order to divert bond fees to the detriment of the Company, its shareholders and

Fenet, a former bond guarantor.

Fenet's termination of benefits claims, however, are alleged to have arisen on June

15, 2010, when the company terminated Fenet's benefits. [rec. doc. 1-1, ¶ 69].  The

wrong sought to be remedied is the Company's decision to terminate Fenet's benefits,

which according to defense counsel, occurred after research and separate discussions as to

the propriety of the termination of each such benefit.

Although Fenet claims the action was retaliatory for his filing the shareholder

derivative action, this wrong, factually, could have occurred in the absence of the

complained of bond scheme and in the absence of the filing of any lawsuit.  *See Eastus*,

97 F.3d at 105 (rejecting the plaintiff's argument that a retaliatory tortious interference

with prospective contractual relations claim is not separate and independent from an

unlawful firing claim under FMLA, even though the plaintiff would not have been forced

to look for new work unless he had been terminated, because factually, the plaintiff could

have sought new employment, even without being fired.).

Furthermore, the latter group of claims seek separate and distinct relief, including

injunctive relief and related claims for monetary damages, while the later claims seek

reinstatement of health insurance benefits, relief which bears little or no relationship to

the relief sought in connection with the shareholders derivative and breach of contract

actions brought on behalf of the Company and its shareholders and bond guarantee

(Fenet).

Moreover, resolution of these state law claims will involve separate and distinct legal and factual inquiries unrelated to the inquiries which must be undertaken under federal law to decide the ERISA claim.  Hence, a determination of Fenet's federal claim and related benefit termination claims will have no effect on the resolution of the state law claims asserted in Fenet's Original, First Supplemental Petition and Second Amended and Restated Petition.

The shareholder derivative action brought by Fenet under Louisiana law is a pure state law claim which is best decided in state court.  The same is true for the various breach of contract claims which Fenet asserts.[9]  These are state law claims, unrelated to the ERISA claim, and are best decided in the state courts.

For the above reasons, all claims, except those asserted in Fenet's  Second Supplement to Second Amended and Restated Petition, will be remanded to state court.

**Plaintiffs' Motion for Attorney Fees and Costs**

Plaintiff also moves under 28 U.S.C. § 1447(c) for an award of costs, expenses and attorney's fees for improper removal of this case.  This court has discretion to award costs and expenses, including attorney's fees, incurred as a result of improper removal.  *Martin v. Franklin Capitol Corp.*, 546 U.S.  132, 126 S.Ct. 704, 709 (2005); *Allstate Insurance Company v. Ford Motor Company*, 955 F.Supp. 667, 670 (W.D. La. 1996).  "Absent

---

[9]Except for those set out in fn. 2, *infra*.

unusual circumstances, courts may award attorney's fees under § 1447(c) only where the

removing party lacked an objectively reasonable basis for seeking removal. Conversely,

when an objectively reasonable basis exists, fees should be denied." *Martin*, 126 S.Ct. at

711 *citing Hornbuckle v. State Farm Lloyds,* 385 F.3d 538, 541 (5th Cir. 2004) and *Valdes*

*v. Walmart Stores, Inc.,* 199 F.3d 290, 293 (5th Cir. 2000).

In light of the above, removal of this case was proper. Accordingly, costs,

expenses and attorney's fees may not be awarded. Moreover, even if such an award was

proper, under the unusual legal and factual circumstances presented in this case, the

undersigned finds that the removal of this case was objectively reasonable. Accordingly,

plaintiff's request for costs, expenses and attorney's fees will be denied.

## CONCLUSION

Based on the foregoing, the Motion to Remand [rec. doc. 11] is **GRANTED in**

**part and DENIED in part,** subject to the stay set forth in the accompanying order**,** and,

accordingly, all claims, with the exception of those set forth by Robert W. Fenet,

individually, in the plaintiff's Second Supplement to Second Amended and Restated

Petition, will be remanded to state court, subject to the stay provided for in the attached

order. Plaintiff's request for costs, expenses and attorney's fees [rec. doc. 23] will be

**DENIED.**

Signed this 8th day of February, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE