RECEIVED
IN LAKE CHARLES, LA.
MAY 13 2011
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| In re: SHAREHOLDERS OF R.E. HEIDT CONSTRUCTION COMPANY, INC. | : | DOCKET NO. 2:10 CV1260 |
| VS. | : | JUDGE MINALDI |
| TED W. PRICE, JR., et al. | : | MAGISTRATE JUDGE HILL |

## MEMORANDUM ORDER

Before the Court is a Motion to Appeal the Magistrate Judge's Ruling, filed by the defendant and third-party defendant, Continental Casualty Company ("Continental"). [Doc. 52].

## BACKGROUND

On April 15, 2009, the plaintiff, Robert W. Fenet ("Fenet"), in his capacity as a shareholder of R.E. Heidt Construction Company, Inc. ("the Company" or "Heidt"), filed a shareholder derivative action on behalf of all similarly situated shareholders in the Fourteenth Judicial District Court, seeking injunctive relief against Ted W. Price, Jr. ("Price"). The plaintiff alleged that Price used false financial statements to coerce former bond and bank guarantors, Ted Price, Sr. and Robert W. Price, Sr., to withdraw their guarantees, so that Price could acquire control over the Company as President and make certain changes to the detriment of the Company and its shareholders. These claims are based solely on Louisiana law. [R. Doc. 4].

Fenet then amended his petition. First, by Second Amended and Restated Petition, Fenet, in his capacity as a former director and minority shareholder of the Company, added Robert W. Price, Jr. ("Price Jr."), a director of the Company, as the defendant. Fenet further added the Company's shareholders as nominal defendants, and he asserted claims for monetary damages on behalf of the Company. Individually, Fenet also asserted a claim for monetary damages for

1

breach of contract based on allegations that he was to receive bond fees, as guarantor, on the former bonds through a bond fee guarantee agreement. Like his original claims, all of these claims were asserted under Louisiana law. [R. Doc. 5].

R.E. Heidt Construction Co., which was named as a defendant in the original petition, answered and brought a third-party demand against Continental Casualty Company.

Next, Fenet filed a First Supplemental Petition in his capacity as a former director and minority shareholder of the Company, naming Continental, the alleged Directors and Officers liability insurer, as an additional defendant under the Louisiana Direct Action Statute. [R. Doc. 5].

Finally, On July 23, 2010, Fenet filed a Second Supplement to the Second Amended and Restated Petition, adding a claim for relief under the Louisiana Whistleblower Statute, which includes recovery of "benefits". *See* La. Rev. Stat. Ann. 23:967(C)(2). He alleges that the Company terminated, or threatened to terminate, his company/employee health insurance benefits as well as other benefits that he is allegedly entitled to by virtue of oral, implied and/or express contracts with the Company. He also asserted that the termination of his benefits caused him mental distress. [R. Doc. 1-1, ¶¶ 69-70, 72-73].

On August 10, 2010, based on the claims asserted in the Second Supplement to the Second Amended and Restated Petition, the Company, with the consent of all non-nominal defendants, removed the entire action alleging federal question jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* [R. Doc. 1]. There is no dispute that the claimed health insurance benefits are provided under an ERISA regulated plan, and that the Company is the plan administrator. [R. Doc. 24-1, ¶ 6].

Fenet filed a Motion to Remand. [R. Doc. 11]. After being briefed on the remand issue and hearing oral arguments from the parties, the Magistrate Judge granted in part and denied in part Fenet's Motion to Remand. [R. Doc. 50].

The Magistrate Judge found that Fenet's claims for benefits in his Second Supplement to the Second Amended and Restated Petition were completely preempted by ERISA and thus were properly removed to this Court. The Magistrate Judge then found that this Court "can exercise supplemental jurisdiction over the related Louisiana state claims for retaliatory termination of benefits, though not governed under ERISA, that were asserted in Fenet's Second Supplement to the Second Amended and Restated Petition." However, the Magistrate Judge remanded the claims asserted by Fenet in his Original, First Supplemental Petition, and Second Amended and Restated Petition, finding that state law predominates. [R. Doc. 50].

Continental timely appealed the Magistrate Judge's ruling. Meanwhile, the plaintiffs have agreed to settle all of their claims against all of the parties except Continental, and this Court has approved that settlement, and dismissed those claims with prejudice. [R. Doc. 66]. Thus, the only remaining claims are between citizens of different states. [R. Doc. 61].

This change in circumstance was not before the Magistrate Judge at the time of his ruling, and those circumstances were not considered. Continental, moreover, has not requested that the Magistrate Judge reconsider his earlier ruling in light of the settlement agreements. Rather, Continental asks this Court to review his ruling, and, in doing so, consider evidence that was neither presented to nor considered by the Magistrate Judge. [R. Doc. 62].

## STANDARD OF REVIEW

Continental asserts that this Court should review the Magistrate Judge's ruling under a *de novo* standard of review, despite acknowledging that the standard of review is typically

3

deferential. The basis for this assertion is that, according to Continental, Magistrate Judges lack authority to order a remand. [R. Doc. 52 at 4].

Although neither the Supreme Court nor the Fifth Circuit has considered whether a magistrate judge may rule on a remand order, lower courts and other circuits are split over the issue. *Compare Saxon v. Thomas*, No. 06–2339, 2007 WL 1974914, at *2 (W.D. La. June 29, 2007); *Robinson v. Cheetah Transp.*, No. Civ. A. 06–0005, 2006 WL 1453036, at *1 (W.D. La. May 17, 2006); *Vaquillas Ranch Co. v. Texaco Expl. & Prod., Inc.*, 844 F. Supp. 1156, 1160–63 (S.D. Tex. 1994); and *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 147 F.R.D. 122, 124 (S.D. Miss. 1993) (holding that motions to remand are non dispositive and may be referred to a United States Magistrate Judge for determination) *with Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir.2008), *Vogel v. U.S. Office Products Co.*, 258 F.3d 509, 517 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000), and *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998) (holding that where remand order prevents litigation in federal court, they are equivalent to a final decision or dispositive action that must be performed by a district court judge). Nevertheless, this Court has applied a deferential standard of review to a magistrate judge's remand order. *See Brignac v. Celadon Trucking Servs., Inc.*, 2:10 CV373, Memorandum Order, December 1, 2010, ECF No. 39. Moreover, the Fifth Circuit implicitly sanctioned the authority of a magistrate judge to consider and issue a remand order in a recent decision. Although the authority of the magistrate judge was not challenged, the Fifth Circuit affirmed an order remanding certain actions without objecting to the magistrate judge's actions. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 382-83 (5th Cir. 2009). Accordingly, a motion to remand is a non-dispositive matter, and this Court will apply a deferential standard of review.

Magistrate judges are empowered by the United States Code to "hear and determine" non-dispositive pretrial motions. 28 U.S.C. § 636(b)(1)(A) (2006). If a party is dissatisfied with a magistrate judge's ruling, it may appeal to the district judge, who may reconsider the ruling and reverse it "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). A finding is clearly erroneous when a reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## LAW & ANALYSIS

Continental raises two objections in its appeal. The first is based on the Magistrate Judge's decision: Continental asserts that "the Magistrate improperly concluded that the non-ERISA claims are separate and independent such that they could be remanded pursuant to 28 U.S.C. § 1441(c), and that even if they are separate and independent, the Magistrate Judge should have exercised his discretion and retained jurisdiction over those claims. [R. Doc. 52 at 4-8]. In its second objection, Continental asserts that the matter was properly removed based on ERISA jurisdiction, and the only remaining claims fall directly under this Court's diversity jurisdiction, as the in-state defendants have settled their dispute. As a result, according to Continental, "[a] settlement post removal that creates diversity jurisdiction which was not present at the time of removal creates subject matter jurisdiction and is a basis for maintaining the case in federal court." [R. Doc. 59 at 2].

### (1) Continental's First Objection

The Magistrate Judge remanded the claims under 28 U.S.C. § 1441(c), which states:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is

> joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Accordingly, for the remand order to be proper, the remanded claims must be (1) separate and independent claims or causes of action; (2) joined with a federal question; (3) otherwise non-removable; and (4) a matter in which state law predominates. *Id.* Only the first and third requirements are in dispute, here. Because Continental's second objection is nearly identical to the third requirement under § 1441(c), it will be examined with the second objection.

To satisfy the first requirement, the claims must be both separate and independent. *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996). "[W]here there is a single wrong to [the] plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951). In other words, "[a] case involving the violation of a single primary right or wherein a party seeks redress for one legal wrong cannot contain separate and independent claims, despite multiple theories of liability against multiple defendants." *Texas v. Walker*, 142 F.3d 813, 817 (5th Cir. 1998). The Fifth Circuit has also "held that a claim is not independent if it involves substantially the same facts." *Eastus*, 97 F.3d 100, 104 (5th Cir. 1996).

Continental asserts that the claims are not separate and independent. It initially argues that the original complaint, based on a "deprivation of [the plaintiff's] stockholder's dividends and the bond fees due him," with an antecedent request for an injunction to prevent the deprivation of future employment benefits, anticipated the ERISA claim, which fell under this Court's subject matter jurisdiction.

However, this argument lacks merit. Continental conflates a cause of action, or claim, with the remedy afforded by a claim. An injunction provides a remedy, not a cause of action. *See Finn*, 341 U.S. at 14, n. 11 ("'The bill alleges the violation of a single right, namely, the right to protection of the copyrighted play. . . . The primary relief sought is an injunction to put an end to an essentially single wrong, however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of actions.'") (quoting *Hurn v. Oursler*, 289 U.S. 238, 246 (1933); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 ("The historic injunctive process was designed to deter, not to punish."); *Verdun v. Scallon Bros. Contractors, Inc.*, 270 So.2d 512, 513 (La. 1972) ("Injunctions may be used to prevent but not to correct a wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done."). A cause of action, by contrast, consists of "an unlawful violation of a right which the facts show." *Finn*, 341 U.S. at 14.[1]

Here, the remanded actions raised allegations that the defendants created a scheme to acquire control of the company in order to divert bond fees, all to the detriment of the Company, its shareholders, and Fenet, a former bond holder. The original complaint sought a remedy – an injunction – designed to prevent additional unlawful actions on part of the Company, including the deprivation of employment benefits governed by ERISA. Those initial complaints did not show any purported unlawful violation of Fenet's right to employment benefits. Nor could it; Heidt did not deprive Fenet of those benefits until June 15, 2010, long after Fenet brought the remanded claims. [R. Doc. 1-1 ¶ 69]. Under the Supreme Court's holding in *Finn*, Fenet must

---

[1] Regardless, Continental seems to argue itself out of federal court with this assertion. If the original complaint anticipated an ERISA violation, and that violation raised a claim or cause of action for that anticipated wrong, then the initial pleading would have raised federal question jurisdiction. In that case, the thirty day removal period had already passed by the time the defendants removed the action to this Court. Thus, the defendants' removal would have been untimely. *See* 28 U.S.C. § 1446(b).

have alleged facts that would describe an unlawful violation of his employment benefits in order to allege a cause of action under ERISA. *See id.*

Nevertheless, Continental contends that the deprivation of Fenet's employment benefits and the deprivation of the his bond fees "all extend from a single ill will or animus on the part of Ted Price, as the President of Heidt." Citing *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100 (5th Cir. 1996), a case the Magistrate Judge relied upon, Continental contends that this case "supports the clear conclusion that these two alleged deprivations are all part of the same series of wrongs." [R. Doc. 52 at 7].

In *Eastus*, the plaintiff-employee filed a civil action in state court for two state law violations: tortious interference with prospective contractual relationships ("tortious interference") and intentional infliction of emotional distress ("IIED"). 97 F.3d at 102-03. The plaintiff also asserted a federal cause of action: a violation of the Family and Medical Leave Act ("FMLA"). *Id.* After the defendant removed the cause of action to federal court, the district court judge remanded the two state law claims under § 1441(c). On appeal, the Fifth Circuit affirmed the district court's order remanding the tortious interference claim, finding that the wrong the plaintiff suffered was his failure to obtain new employment because of the defendant's purported post-termination statements to one of the plaintiff's prospective employers. The court reasoned that "[f]iring someone and preventing him from finding a new job are very different wrongs." *Id.* at 105.

The court further found that "proof of the two counts [would] not involve 'substantially the same facts.'" The proof of malice required by the tortious interference claim was only "tenuously related to the FMLA claim." The plaintiff, moreover, did not allege in his complaint that the family leave request was the motive for the defendant's tortious statements; rather, he

claimed that the defendant made false statement about him in retaliation for his complaints about the defendant's truck and equipment when he returned from vacation. *Id.* at 105-06.

Likewise, the court rejected the defendant's argument that the tortious interference claim extended from the same wrong, the plaintiff's discharge; that is, "[the plaintiff] would not have been forced to look for new employment unless he had been terminated." *Id.* Factually, the court reasoned that the plaintiff could have sought new employment without being fired, and logically, the court noted that if this fact was sufficient to find the two claims were not separate and independent, then anything related to any future job the plaintiff may have would be linked to the FMLA claim. This latter argument, the court reasoned, would be "overreaching." *Id.* at 105, n. 4.

However, the court found that the plaintiff's IIED claim and FMLA claim were not separate and independent when both claims were based on the employee's discharge. Specifically, the complaint alleged that the "outrageous nature of [the] *discharge*" caused severe emotionally distress. *Id.* at 114.

This is not a case where a series of wrongs, here a purported effort to gain control of a corporation and divert bond fees, gave rise to an alternative form of recovery under ERISA. Unlike the basis for the IIED claim and FMLA claim in *Eastus*, here the bond scheme did not result in the termination of Fenet's employment benefits. *Id.* Rather, it was Fenet's lawsuit challenging the propriety of the bond scheme that gave rise to the ERISA claim. In other words, these are very different wrongs with two differing forms of relief. *See id.*

Likewise, Fenet's derivative action "could have occurred in the absence of the complained of bond scheme," as the Magistrate Judge correctly highlighted [R. Doc. 16], just as the facts giving rise to the tortious interference claim in *Eastus* could have occurred absent the plaintiff's discharge. *Id.* Factually, the claims are based on distinct wrongs. Likewise, if this

Court were to give credence to Continental's argument that the two claims are related because the ERISA claim could not have occurred absent the bond scheme, then any adverse employment action after the defendants engaged in the purported bond scheme would be related. Such logic was explicitly rejected in *Eastus*. 97 F.3d at 105, n. 4.

Furthermore, proof of the two counts will not involve substantially the same facts or result in differing resolutions of the same issue. The ERISA claim will be based on proof that Heidt unlawfully terminated Fenet's employment benefits. This action, according to the complaint, was motivated by Fenet's lawsuit challenging the bond scheme, not to further the bond scheme. Any defense will be based on "research and separate discussions as to the propriety of the termination of each . . . benefit." [R. Doc. 50 at 16]. Although it is true that the defendant in *Eastus* may have been motivated by some general ill will or malice toward the plaintiff, the motives prevalent in that case were based on distinct wrongs: the plaintiff's request for leave and his later termination provided the basis for the FMLA and IIED claims, while the ill will stemming from the plaintiff's complaint about the defendant's truck and equipment gave rise to the tortious interference claim. 97 F.3d at 105-06.

Here, even assuming that both resulted from some general ill will or malice directed at Fenet, the motive underlying Fenet's ERISA claim is not based on the defendant's purported efforts to gain control of the corporation and divert bond fees away from Fenet. Just as the Fifth Circuit reasoned in *Eastus*, evidence of some general motive will not support a finding that the claims are not separate and independent when the two claims will not involve the same factual inquiry. *Id*. Thus, the Magistrate Judge was correct. The remanded claims are separate and independent from those claims raised in the Second Supplement to the Second Amended Petition. [R. Doc. 50 at 17]. Accordingly, this Court rejects Continental's first objection.

### (2) Continental's Second Objection

Continental contends that subject matter jurisdiction exists on the remanded claim because a contemplated settlement will render 28 U.S.C. § 1332 satisfied. Thus, Continental contends that the remanded claims are removable standing alone; thus, they will not be subject to remand under § 1441(c). But Continental's argument does not end there. It further contends that "[a] settlement post removal that creates diversity jurisdiction which was not present at the time of removal creates subject matter jurisdiction and is a basis for maintaining the case in federal court." [R. Doc. 59 at 2].

Generally, diversity jurisdiction is determined at the time the action is filed. *See, e.g., Louisville, N.A. & C.R. Co. v. Louisville Trust Co.*, 174 U.S. 552 (1899). If subject matter jurisdiction does not exist when the action is filed, it may be removed to federal court if later developments render the case removable (e.g., if subject matter jurisdiction exists at a later date). 28 U.S.C. § 1446(b). For a claim to be removable based on § 1332, however, diversity must exist at the time the removal petition is presented to the federal court. *See, e.g., Jackson v. Allen*, 132 U.S. 27 (1889).

There is no dispute that diversity jurisdiction did not exist at the time of removal. And, even if it had, removal would have been improper under § 1446(b), which forbids removal under § 1332 "more than 1 year after the commencement of the action." More than one year passed from the time the initial complaint was filed to the time of removal. [R. Docs. 1-1 & 5]. Accordingly, the remanded claims remain "otherwise non-removable." *See* 28 U.S.C. § 1446(c).

Nevertheless, in *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996), the Supreme Court held that a judgment shall stand as long as subject matter jurisdiction properly existed at the time of judgment, even if subject matter jurisdiction did not exist at the time of removal. There, the case

was removed from state to federal court even though complete diversity did not exist. Despite the jurisdictional defect, the district court accepted jurisdiction. During litigation, the non-diverse party was dropped from litigation, and at that point, there was complete diversity. Eventually, the district court rendered judgment, and on appeal, the circuit court dismissed the lawsuit because jurisdiction did not exist at the time of removal. The Supreme Court, however, overruled the circuit court and held that a judgment should stand as long as jurisdiction properly existed at the time of judgment. In ruling that the judgment should stand, the Court emphasized that "[o]nce a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming." *Id.* at 76.[2]

The same considerations emphasized in *Caterpillar* do not exist here. This Court has not rendered a final judgment. Thus, Continental essentially asks this Court to ignore the removal defect currently at issue, even without the same considerations of finality, efficiency, and economy. [R. Doc. 59].

The Supreme Court, however, rejected such an outcome in *Caterpillar*, explaining: "[t]he procedural requirements for removal remain enforceable by the federal trial court judges to whom those requirements are directly addressed . . . . [And] the well-advised defendant . . . will

---

[2] On the other hand, in *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), the Supreme Court held that a change in citizenship could not cure a jurisdictional defect existing at the time the lawsuit was filed, despite diversity jurisdiction existing at the time of judgment. Nonetheless, how the Court justified the difference between the two holdings does lend some credence to Continental's argument. In *Grupo*, the Court explained that "[t]he resulting holding of *Caterpillar* . . . is only that a statutory defect – 'Caterpillar's failure to meet the § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed' [519 U.S.] at 73 – did not require dismissal once there was no longer any jurisdictional defect." *Id.* at 573. This Court, however, considers the statement non-binding dicta, as removal is no less a creature of statute than subject matter jurisdiction under 28 U.S.C. § 1332. *See, e.g., Sheldon v. Sill*, 49 U.S. 441 (1850) (explaining that Congress creates lower federal courts and thus has discretion to vest them with less than the full jurisdiction allowed in Article III). And, in any event, both *Caterpillar* and *Groupo* are factually distinguishable from this case, as a final judgment had been rendered in those cases.

12

foresee the likely outcome of an unwarranted removal – a swift and nonreviewable remand order . . . ." 519 U.S. at 79. That diversity may exist now does not render the remanded claims removable. Thus, Continental's second objection lacks merit.

Ultimately, the Magistrate Judge properly exercised his discretion in remanding all claims, except those asserted in Fenet's Second Supplement to Second Amended and Restated Petition, to state court. Since only the state law claims against Continental remain, this Court will remand the entire action to state court. Accordingly, it is

ORDERED that Continental's Motion to Appeal the Magistrate Judge's Ruling is hereby DENIED;

IT IS FURTHER ORDERED that the case is remanded to state court.

Lake Charles, Louisiana, this __12_ day of ___May_____ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE